UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ROBERT S. BENNETT, NACHAEL FOSTER, ANDREW BAYLEY, and others similarly situated,<br><br>        Plaintiffs,<br><br>   v.<br><br>STATE BAR OF TEXAS,<br><br>        Defendant. | Civil Action No. 4:21-cv-02829 |

**DEFENDANT STATE BAR OF TEXAS' MOTION TO DISMISS**

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Defendant State Bar of Texas respectfully moves to dismiss this action.  As "an administrative agency of the judicial department of [the Texas] government," Tex. Gov't Code Ann. § 81.011(a), the Texas State Bar is an arm of the State of Texas.  The Court thus lacks subject-matter jurisdiction over this action because the Texas State Bar is entitled to sovereign immunity under binding Fifth Circuit precedent.  Plaintiffs also fail to state a claim under 42 U.S.C. § 1983 because, as a state agency, the Texas State Bar is not a "person" subject to suit under § 1983.

**BACKGROUND**

**I.     The State Bar Of Texas**

In 1939, the Texas legislature created the State Bar of Texas as "an administrative agency of the Judicial Department of the State."  State Bar Act § 2, 1939 Tex. Gen. Laws 64.  Today, the State Bar Act (Tex. Gov't Code Ann. ch. 81) provides that the Texas State Bar "is a public corporation and an administrative agency of the judicial department of [the Texas] government," subject to the Supreme Court of Texas' "administrative control."  Tex. Gov't Code Ann. § 81.011(a), (c); *see also id.* § 81.011(b) (State Bar Act "is in aid of the judicial department's

1

powers under the constitution to regulate the practice of law"). The Bar's legislatively defined "purposes" include "advanc[ing] the quality of legal services," "aid[ing] the courts in carrying on and improving the administration of justice," and "foster[ing] and maintain[ing]" among lawyers "high ideals and integrity, learning, competence in public service, and high standards of conduct." *Id.* § 81.012.

The Texas Supreme Court has delegated "the responsibility for administering and supervising lawyer discipline and disability . . . to the Board of Directors of the State Bar of Texas." Tex. Rules Disciplinary P. preamble. The State Bar's President appoints the attorney members of the Commission for Lawyer Discipline, which selects Texas' Chief Disciplinary Counsel "with the advice and consent" of the State Bar's Board of Directors. Tex. Gov't Code Ann. § 81.076(b), (g). Bar directors nominate, and the Bar's President appoints, the members of local grievance committees, which preside over disciplinary proceedings. Tex. Rules Disciplinary P. R. 2.02, 2.07, 2.11-.15, 2.17. The President also appoints four of the members of the Committee on Disciplinary Rules and Referenda, which is charged with proposing amendments to Texas' disciplinary rules. Tex. Gov't Code Ann. §§ 81.0872-.0873, .0875. In addition, the State Bar's Board of Directors must approve any disciplinary-rule amendments proposed by the Committee before they can take effect. *Id.* §§ 81.0877, .08792.

Consistent with the approach of the majority of states, the Texas State Bar is a "mandatory" or "integrated" bar. *McDonald v. Longley*, 4 F.4th 229, 237 (5th Cir. 2021), *petitions for cert. filed*, No. 21-800 (U.S. Nov. 24, 2021), *and* No. 21-974 (U.S. Dec. 30, 2021). That means attorneys must enroll in the Bar and pay annual membership fees to practice law in Texas. *See* Tex. Gov't Code Ann. §§ 81.051, .054, .102. As of December 2020, the Bar had 106,591 active

2

members.  *See* State Bar of Texas Membership: Attorney Statistical Profile (2020-21), https://bit.ly/3k6MFGl; *see also* Tex. Gov't Code Ann. § 81.052 (membership classes).

Approximately half of the Bar's annual revenue comes from membership fees.[1]  *See McDonald*, 4 F.4th at 237-38; State Bar of Texas Financial Report May 31, 2020, at 7, 9, https://bit.ly/3z6INcR (Ex. 1).[2]  The annual membership fees are currently $68 for active members licensed less than 3 years; $148 for active members licensed between 3 and 5 years; $235 for active members licensed for at least 5 years; and $50 for inactive members.  State Bar of Texas Board of Directors Policy Manual § 3.01.01 (Sept. 2021), https://bit.ly/3fbf1vQ (Ex. 2) ("Policy Manual").  Those fees may not be increased without the Texas Supreme Court's approval.  *See* Tex. Gov't Code Ann. § 81.054(a) ("The supreme court shall set membership fees and other fees for members of the state bar during the court's annual budget process under Section 81.022.").

The Texas Supreme Court also has ultimate authority over how the Bar's membership fees are spent.  Members pay their fees to the Clerk of the Texas Supreme Court, not to the Bar itself.  *Id.* § 81.054(c).  The Bar's budget must be approved by the Texas Supreme Court.  *Id.* § 81.022(d).  Moreover, the Texas Supreme Court Clerk will distribute membership fees to cover Bar expenditures only "under the direction of the supreme court."  *Id.* § 81.054(c); *see also id.* § 81.0151 (Bar "[p]urchases are subject to the ultimate review of the supreme court.").

Reflecting the Bar's statutorily defined status as a state "agency," *id.* § 81.011(a); *see also supra* p. 1, the Texas legislature has imposed additional restrictions on the Bar's use of Bar funds. The Bar's Board must "adopt guidelines and procedures for purchasing that are consistent with the guidelines and procedures" applicable to other state agencies.  Tex. Gov't Code Ann. § 81.0151.

---

[1] The Bar's second largest revenue source is fees from continuing legal education programs.  *See McDonald*, 4 F.4th at 238 n.3; State Bar of Texas Financial Report May 31, 2020, at 9.

[2] "Ex." refers to exhibits attached to the Declaration of Patrick W. Mizell in support of this motion.

The Bar may not use membership fees to purchase alcohol. *Id.* § 81.0221. The Bar also may not use its funds to influence "the passage or defeat of any legislative measure unless the measure relates to the regulation of the legal profession, improving the quality of legal services, or the administration of justice." *Id.* § 81.034. In addition, the Bar must maintain reports regarding its purchases and "make those reports available for review by the state auditor" upon request. *Id.* § 81.0151; *see also id.* § 81.023 (State Bar is "subject to audit by the state auditor" and must file its annual financial reports "with the supreme court, the governor, and the presiding officer of each house of the legislature").

The Bar's budget is also used to fund entities not subject to the Bar Board's direct control, including the Commission for Lawyer Discipline, the Office of Chief Disciplinary Counsel, the Board of Disciplinary Appeals, the Ombudsman for the Attorney Discipline System, the Committee on Professional Ethics, the Unauthorized Practice of Law Committee, and the Texas Access to Justice Commission. *Id.* §§ 81.076(f), .0882(a), .095, .103(f); Tex. Rules Disciplinary P. R. 4.08, 5.01; Order Establishing Texas Access to Justice Commission ¶ 12, Misc. Docket No. 01-9065 (Tex. Apr. 26, 2001), https://bit.ly/2YJ3DSY (Ex. 3). More generally, the Bar is required to "allocate funds to pay all . . . reasonable and necessary expenses to administer the disciplinary and disability system effectively and efficiently." Tex. Rules Disciplinary P. R. 4.08.

In addition to Bar membership fees, most active Bar members must pay a $65 annual legal services fee. Tex. Gov't Code Ann. § 81.054(j)-(k). The Texas State Bar does not receive or control that fee. *Id.* § 81.054(c)-(d). Instead, the Texas Supreme Court distributes it to the Comptroller, who allocates half to the Supreme Court Judicial Fund for civil legal services for the indigent, and the remainder to the Fair Defense Account of the state's general revenue fund for indigent criminal defense programs. *Id.* § 81.054(c).

4

Further confirming its status as a state agency, the Bar is subject to numerous other legislatively imposed restrictions and requirements. Like other state agencies in Texas, the Bar is subject to periodic "sunset" reviews by the legislature to determine "whether a public need exists" for the Bar's continued existence.[3] *Id.* §§ 81.003, 325.011. Bar records are subject to the Texas Public Information Act, and Bar Board meetings are subject to the same open meetings laws that apply to other state agencies. *See id.* §§ 81.021, .033. The State Bar Act reserves a role for both the Texas governor and the Texas Senate in appointing the Bar Board's non-attorney members. *See id.* § 81.020(b)(4) (Board's six non-attorney members are "appointed by the supreme court and confirmed by the senate"); *id.* § 81.020(c) ("The supreme court shall annually appoint two nonattorney members, with at least one of the two from a list of at least five names submitted by the governor."). The Act also contains numerous provisions governing the selection and ethical obligations of the Bar's officers, directors, Executive Director, and General Counsel. *See id.* §§ 81.019-.020, .0241, .025, .027-.031. The Act further requires Bar Board members to complete a training program covering eight specific topics. *Id.* § 81.0201. In addition, the Bar must develop a long-range strategic plan and report its performance measures to the Texas Supreme Court and in the *Texas Bar Journal*. *Id.* § 81.0215. Other legislatively imposed requirements include that the Bar establish a standard fee dispute resolution procedure, *id.* § 81.112; provide a course on guardianship, *id.* § 81.114; create and maintain online attorney profiles, *id.* § 81.115; and refrain from creating new standing or special committees of the Bar unless certain conditions are satisfied, *id.* § 81.123.

---

[3] The Bar has undergone sunset review four times, the last in 2017, when the legislature voted to continue the Bar's existence until the next review in 2029. *See McDonald v. Sorrels*, No. 1:19-cv-219-LY, 2020 WL 3261061, at *2 (W.D. Tex. May 29, 2020), *vacated in part sub nom. McDonald v. Longley*, 4 F.4th 229 (5th Cir. 2021).

The Bar is also subject to rules promulgated by the Texas Supreme Court. *See id.* § 81.024. Those rules impose detailed requirements regarding numerous aspects of the Bar's activities, from the location of the Bar's principal office to procedures for Bar meetings and the election of Bar directors and officers. *See* Tex. State Bar R. art. II, §§ 5, 14 (Nov. 2021), https://bit.ly/3pshwPc (Ex. 4); *id.* art. IV, §§ 6-7, 11. The rules require all State Bar officers and directors to take the oath of office required for state officials under the Texas Constitution. *See id.* art. II, § 9 (citing Tex. Const. art. XVI, § 1).

## II.     *McDonald* And The Bar's Response

In March 2019, three Texas State Bar members filed suit in the U.S. District Court for the Western District of Texas against the members of the Bar's Board of Directors in their official capacities. In Counts I and II of their complaint, the plaintiffs in that case—*McDonald v. Sorrels*, No. 1:19-cv-00219-LY (W.D. Tex.)—claimed that the requirements that they enroll in, and pay annual membership fees to, the Bar violated their First Amendment rights to freedom of association and speech. Pls. 1st Am. Compl. ¶¶ 51-66, *McDonald v. Sorrels*, No. 1:19-cv-00219-LY (W.D. Tex. May 31, 2019), ECF No. 59 ("*McDonald* Am. Compl."). In Count III, the plaintiffs claimed that the "Bar's procedures are inadequate to ensure that members are not coerced into funding" expenditures that are not germane to the permissible purposes of a mandatory bar under *Keller v. State Bar of California*, 496 U.S. 1 (1990). *McDonald* Am. Compl. ¶ 73. The plaintiffs sought declaratory and injunctive relief. *Id.* at 18.

In May 2020, the district court granted summary judgment to the Bar defendants on all of the *McDonald* plaintiffs' claims and dismissed the plaintiffs' motion for a preliminary injunction. *See McDonald v. Sorrels*, No. 1:19-cv-219-LY, 2020 WL 3261061, at *8-9 & n.4 (W.D. Tex. May 29, 2020). The *McDonald* plaintiffs appealed to the Fifth Circuit. On July 2, 2021, the Fifth

6

Circuit issued a decision that vacated the grant of summary judgment to the Bar defendants, rendered partial summary judgment for the plaintiffs on liability, rendered a "preliminary injunction preventing the Bar from requiring the plaintiffs to join or pay dues pending completion of the remedies phase" before the district court, and remanded to the district court for further proceedings on remedies. *McDonald*, 4 F.4th at 255.

The Fifth Circuit recognized that the Supreme Court held in *Keller* that state bars "may constitutionally charge mandatory dues to 'fund activities germane' to 'the purpose[s] for which compelled association [is] justified,' i.e., 'regulating the legal profession and improving the quality of legal services.'" *Id.* at 244 (quoting *Keller*, 496 U.S. at 13-14). The Fifth Circuit, however, held that "[c]ompelled membership in a bar association that engages in non-germane activities" violates objecting members' right to freedom of association, and compelling objecting members "to subsidize . . . non-germane activities violates their freedom of speech." *Id.* at 246-47, 252. The court concluded that nearly all of the Bar's challenged activities were germane—including its support of *pro bono* and legal-aid efforts, annual meeting, continuing legal education programs, publication of the *Texas Bar Journal*, and diversity initiatives. *Id.* at 247-52. The court, however, held that certain components of "the Bar's 2019 legislative program," as well as certain prior legislative activities of the Bar-funded Access to Justice Commission, were non-germane. *Id.* at 247-49, 251.

Based on those non-germane legislative activities, the court held that requiring the *McDonald* plaintiffs to enroll in the Bar violates their right to freedom of association, and the Bar's use of the *McDonald* plaintiffs' mandatory membership fees to fund non-germane activities violates their right to free speech. *Id.* at 252. In addition, on the *McDonald* plaintiffs' Count III claim, the court held that "the Bar's procedures for separating chargeable from non-chargeable

7

expenses" were "constitutionally inadequate." *Id.* at 252-54.  The Fifth Circuit, however, noted that the Bar could remedy the constitutional violations by not "engaging in non-germane activities," and by amending its procedures to ensure that Bar members receive adequate notice of, and opportunity to object to, potentially non-germane expenditures. *Id.*  Because the plaintiffs had only sought "partial summary judgment on liability," the Fifth Circuit remanded for further proceedings in the district court on remedies.  *Id.* at 241, 255.

At its September 24, 2021 meeting, the Bar's Board of Directors approved amendments to the Board's Policy Manual to ensure compliance with the Fifth Circuit's decision.  The Bar defendants summarized those changes in a September 30 filing with the *McDonald* district court, a copy of which is attached as Exhibit 5.  Acting on a petition from the Bar, the Texas Supreme Court also amended the Texas State Bar Rules in response to the Fifth Circuit's decision.  *See* Ex. 5, ¶ 9; Order Amending Articles I and II of the State Bar Rules, Misc. Docket No. 21-9122 (Tex. Oct. 12, 2021), https://www.txcourts.gov/media/1452997/219122.pdf.

On remand from the Fifth Circuit, the parties in *McDonald* agreed to a proposed final judgment, which the district court entered on December 2, 2021.  *See* Ex. 6.  In the judgment, the district court noted that the *McDonald* plaintiffs had requested restitution of membership fees they paid under protest while the action was pending.  *Id.* ¶ 5.  The district court denied that request based on the Bar defendants' "sovereign immunity."  *Id.* (citing *Liedtke v. State Bar of Tex.*, 18 F.3d 315, 318 n.12 (5th Cir. 1994)).

### III.    This Lawsuit

Plaintiffs in this case are three active members of the Texas State Bar who reside in Harris and Tarrant Counties.  Compl. ¶¶ 10-12 (Aug. 30, 2021), ECF No. 2.  Plaintiffs filed their complaint on August 30, 2021.  The only named defendant in the complaint is the "State Bar of Texas."  *Id.* ¶ 13.  Although the complaint's caption and first paragraph also refer to "culpable officials" within the Bar, *id.* at 1, the complaint does not specifically name any such officials as defendants.  The docket in this case also does not indicate that Plaintiffs have served a summons and copy of their complaint on any persons or entities other than the Bar (which agreed to waive service).  Therefore, the Bar is the only defendant properly in this case.[4]

Plaintiffs purport to represent a putative class consisting of "all Texas-licensed attorneys, past or present, and on either active or inactive status, who have endured First Amendment violations because of the Texas Bar's relevant unlawful conduct."  *Id.* ¶ 21.  They assert causes of action under the First Amendment and 42 U.S.C. § 1983, as well as state-law claims of money had and received and unjust enrichment.  *Id.* ¶¶ 25-37.  Among other things, they seek "compensatory and/or punitive damages"; injunctive relief, including an order requiring the Bar to refund previously paid membership fees; and "equitable monetary relief."  *Id.* at 14-15; *see also id.* ¶ 5 (seeking "a refund of the full amount paid in membership dues to the [Bar] during recent years, plus court costs, damages and expenses including attorney's fees").  As the basis for their complaint, Plaintiffs exclusively rely on the Fifth Circuit's decision in *McDonald*.  *See id.* ¶¶ 2, 18; *see also* Notice of a Related Case ¶ 2 (Dec. 3, 2021), ECF No. 7 ("Notice") (stating that Plaintiffs' action "is based on" *McDonald*).  Aside from discussing the Fifth Circuit's *McDonald*

---

[4] This case thus differs from *McDonald*, in which the plaintiffs filed suit against the members of the Texas State Bar Board of Directors in their official capacities.  *See McDonald*, 2020 WL 3261061, at *3.

decision, Plaintiffs' complaint does not contain any additional factual allegations of Bar activities that Plaintiffs allege violate their First Amendment rights or are otherwise unlawful.

## ARGUMENT

Plaintiffs' action must be dismissed for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) because the State Bar of Texas is entitled to sovereign immunity from suit in federal court. *See Warnock v. Pecos Cty.*, 88 F.3d 341, 343 (5th Cir. 1996) (explaining that claims barred by sovereign immunity should be dismissed under Rule 12(b)(1) because "sovereign immunity deprives the court of jurisdiction"); *see also, e.g.*, *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) (explaining that, "in the absence of consent," sovereign immunity bars "a suit in which the State or one of its agencies or departments is named as the defendant," "regardless of the nature of the relief sought").  For similar reasons, Plaintiffs' claim under 42 U.S.C. § 1983 must also be dismissed under Rule 12(b)(6) because the Texas State Bar—as "an administrative agency of the judicial department of [the Texas] government," Tex. Gov't Code Ann. § 81.011(a)—is not a "person" subject to suit under § 1983.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64, 71 (1989); *accord Cronen v. Tex. Dep't of Human Servs.*, 977 F.2d 934, 936 (5th Cir. 1992) (holding that a Texas state agency was not a "'person[]' for purposes of liability under 42 U.S.C. § 1983"); *see also* 42 U.S.C. § 1983 (creating a cause of action against a "person" who violates constitutional rights under color of state law); *Vermont Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 779-80 (2000) (holding that courts may address "the question whether the statute itself *permits* the cause of action it creates to be asserted against States" before addressing the jurisdictional question of sovereign immunity).  In ruling on this motion, the Court may consider facts beyond the complaint, *see Clark v. Tarrant Cty.*, 798 F.2d 736, 741 (5th Cir. 1986), including—at minimum—facts regarding the Bar of which the Court

may take judicial notice because they are not subject to reasonable dispute, *see Basic Cap. Mgmt., Inc. v. Dynex Cap., Inc.*, 976 F.3d 585, 588-89 (5th Cir. 2020).

Under controlling Fifth Circuit precedent, the State Bar of Texas qualifies as an arm of the State of Texas; therefore, it is immune from suit in federal court and does not qualify as a "person" subject to suit under § 1983.  In *Krempp v. Dobbs*, 775 F.2d 1319 (5th Cir. 1985), the Fifth Circuit squarely held that "claims for damages" and "injunctive relief" "against the [Texas] State Bar," including a claim under 42 U.S.C. § 1983, were "barred by the eleventh amendment" principle of sovereign immunity.  *Id.* at 1320-21; *see also Alden v. Maine*, 527 U.S. 706, 713 (1999) (explaining that "Eleventh Amendment immunity" is "convenient shorthand" for "the States' immunity from suit").  The Fifth Circuit reiterated that holding in *Bishop v. State Bar of Texas*, 791 F.2d 435 (5th Cir. 1986), again concluding that "the State Bar of Texas is a state agency such that an action for damages" under § 1983 "is barred by the eleventh amendment."  *Id.* at 437-38.  The Fifth Circuit did the same in *Liedtke v. State Bar of Texas*, 18 F.3d 315 (5th Cir. 1994), noting that a plaintiff's "section 1983 suit for damages" against the Texas State Bar "necessarily founder[ed] on eleventh amendment immunity."  *Id.* at 318 n.12; *see also Harper v. State Bar of Tex.*, 636 F. App'x 805, 806 (D.C. Cir. 2016) (per curiam) (following Fifth Circuit precedent in holding that "suit against the State Bar of Texas, an agency of the state judiciary, is barred by the Eleventh Amendment").  Citing its earlier decision regarding the Texas State Bar in *Krempp*, the Fifth Circuit has similarly held that the Louisiana State Bar Association can claim sovereign immunity.  *See Lewis v. La. State Bar Ass'n*, 792 F.2d 493, 497-98 (5th Cir. 1986).

In sum, binding Fifth Circuit precedent firmly establishes that mandatory state bars—including, specifically, the Texas State Bar—are arms of the state immune from suit and not subject to § 1983 claims.  The district court's judgment in *McDonald* properly applied that binding

11

case law, denying the *McDonald* plaintiffs' request for restitution of membership fees based on the Bar defendants' "sovereign immunity." Ex. 6, ¶ 5.  Especially considering that Plaintiffs' claims here are expressly "based on" *McDonald*, Notice ¶ 2, no reason exists for a different result in this case.

The Fifth Circuit decisions expressly holding that the Texas State Bar can claim sovereign immunity accord with the Fifth Circuit's general sovereign immunity case law.  The Fifth Circuit has established a six-factor test for determining whether an entity qualifies as an "arm of the state" entitled to sovereign immunity.  *Daniel v. Univ. of Tex. Sw. Med. Ctr.*, 960 F.3d 253, 256-57 (5th Cir. 2020).  Those six factors are:

> (1) Whether the state statutes and case law view the agency as an arm of the state;
>
> (2) The source of the entity's funding;
>
> (3) The entity's degree of local autonomy;
>
> (4) Whether the entity is concerned primarily with local as opposed to statewide[] problems;
>
> (5) Whether the entity has the authority to sue and be sued in its own name; and
>
> (6) Whether the entity has the right to hold and use property.

*Id.*  Not all of the factors need to favor sovereign immunity for such immunity to apply.  *Hudson v. City of New Orleans*, 174 F.3d 677, 681-82 (5th Cir. 1999).  "Rather than forming a precise test, the[] factors help [the court] balance the equities and determine as a general matter 'whether the suit is in reality a suit against the state itself.'"  *Id.* at 682 (quoting *Laje v. R.E. Thomason Gen. Hosp.*, 665 F.2d 724, 727 (5th Cir. 1982)).

The six-factor test strongly weighs in favor of treating the Texas State Bar as an arm of the State of Texas.  The first factor favors that determination because the Bar is considered an arm of the state under state law.  The State Bar Act expressly provides that the Bar is "an administrative

agency of the judicial department of government." Tex. Gov't Code Ann. § 81.011(a). The Bar acts as a statewide regulatory agency: The Texas Supreme Court has delegated to the Bar Board "the responsibility for administering and supervising lawyer discipline and disability." Tex. Rules Disciplinary P. preamble; *see also supra* p. 2. As the U.S. Supreme Court has recognized, regulating the practice of law is a "core" sovereign function. *Hoover v. Ronwin*, 466 U.S. 558, 569 n.18 (1984) (citation omitted).

Similar to other state agencies, the Bar is subject to "sunset" reviews, open meetings and records laws, state audits, reporting requirements, ethics mandates, and other legislatively imposed requirements and restrictions regarding its internal organization, operations, and use of funds. *See* Tex. Gov't Code Ann. §§ 81.003, .0151, .019-.0215, .0221-.023, .0241, .025, .027-.031, .033-.034, .112, .114-.115, .123; *see also supra* pp. 3-5. Furthermore, both Texas' governor and Senate play a role in the appointment of certain members of the Bar's Board of Directors. *See* Tex. Gov't Code Ann. § 81.020(b)(4), (c); *see also supra* p. 5. The Bar is also subject to detailed rules imposed by the Texas Supreme Court. *See* Tex. Gov't Code Ann. § 81.024; *see also supra* p. 6. Further confirming the Bar's status as an arm of the state, all State Bar officers and directors must take the oath of office required for state officials under the Texas Constitution. *See* State Bar R. art. II, § 9 (citing Tex. Const. art. XVI, § 1).

Moreover, Texas case law treats the Bar as an arm of the state. Numerous Texas cases have recognized that the Bar "is a governmental agency that is entitled to the protection afforded by sovereign immunity" under Texas state law. *State Bar of Tex. v. Wilson*, No. 03-18-00649-CV, 2019 WL 1272616, at *2 (Tex. App.—Austin Mar. 20, 2019, pet. denied); *accord Doe v. Bd. of Dirs. of State Bar of Tex.*, No. 03-15-00007-CV, 2015 WL 6656216, at *2 (Tex. App.—Austin Oct. 27, 2015, pet. denied); *Laubach v. State Bar of Tex.*, No. 03-00-00282-CV, 2000 WL

1675701, at *2 (Tex. App.—Austin Nov. 9, 2000, no pet.) (not designated for publication); *Favaloro v. State Bar of Tex.*, No. 05-96-01461-CV, 1998 WL 721281, at *4 (Tex. App.—Dallas Oct. 16, 1998, no pet.) (not designated for publication).  Factor 1 thus definitively favors treating the Bar as an arm of the state.

Factor 2—the Bar's funding source, *Daniel*, 960 F.3d at 256—does so as well.  Although the Bar does not receive funds from the legislative appropriations process and is responsible for its own financial obligations, *see* Tex. Gov't Code Ann. § 81.017, it does not have full autonomy with respect to its funds.  The Texas Supreme Court must approve the Bar's budget.  *Id.* § 81.022(d).  Bar membership fees are paid to the Clerk of the Texas Supreme Court, not to the Bar itself, and the Clerk will distribute membership fees to cover State Bar expenditures only "under the direction of the supreme court."  *Id.* § 81.054(c); *see also id.* § 81.0151 (Bar "[p]urchases are subject to the ultimate review of the supreme court.").  Most significantly, the Bar's funds are effectively used as a multi-purpose revenue fund within the judicial department. The Bar's revenues are used to fund numerous entities not subject to the Bar Board's direct control, including the Commission for Lawyer Discipline, the Office of Chief Disciplinary Counsel, the Board of Disciplinary Appeals, the Ombudsman for the Attorney Discipline System, the Committee on Professional Ethics, the Unauthorized Practice of Law Committee, and the Texas Access to Justice Commission.  *Id.* §§ 81.076(f), .0882(a), .095, .103(f); Tex. Rules Disciplinary P. R. 4.08, 5.01; Ex. 3, ¶ 12; *see also Thiel v. State Bar of Wis.*, 94 F.3d 399, 402 (7th Cir. 1996) (emphasizing, in holding that Wisconsin State Bar was entitled to sovereign immunity, that Wisconsin Bar's dues were used to fund other entities), *overruled on other grounds by Kingstad v. State Bar of Wis.*, 622 F.3d 708 (7th Cir. 2010); *United Carolina Bank v. Bd. of Regents of Stephen F. Austin State Univ.*, 665 F.2d 553, 560-61 (5th Cir. Unit A 1982) (sovereign immunity

applies where paying a judgment "would interfere with the [state's] fiscal autonomy and political sovereignty"). Indeed, the Bar must "allocate funds to pay all . . . reasonable and necessary expenses to administer the disciplinary and disability system" in Texas.[5] Tex. Rules Disciplinary P. R. 4.08.

Factors 3 and 4—"[t]he entity's degree of local autonomy" and "[w]hether the entity is concerned primarily with local as opposed to statewide[] problems," *Daniel*, 960 F.3d at 256—strongly favor treating the Bar as an arm of the state. The Bar operates, and addresses issues, statewide, and its autonomy is constrained both by the State Bar Act and by the fact that it is subject to the "administrative control" of the Texas Supreme Court. Tex. Gov't Code Ann. § 81.011(c). Although factors 5 and 6 weigh against treating the Bar as an arm of the state because the Bar may sue and be sued in its own name and may hold and use property, *see id.* §§ 81.014, .016,[6] those factors receive "significantly less" weight than the others, *Cozzo v. Tangipahoa Parish Council—President Gov't*, 279 F.3d 273, 281 (5th Cir. 2002). Therefore, on balance, the six-factor test confirms the result required by binding Fifth Circuit precedent: The Texas State Bar is an arm of

---

[5] In any event, the principle of sovereign immunity "does not exist solely in order to 'preven[t] federal-court judgments that must be paid out of a State's treasury.'" *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 58 (1996) (quoting *Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 48 (1994)). "[I]t also serves to avoid 'the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties.'" *Id.* (quoting *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993)); *see also Fed. Mar. Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 760 (2002) ("The preeminent purpose of state sovereign immunity is to accord States the dignity that is consistent with their status as sovereign entities.").

[6] The State Bar Act's "sue and be sued" provision, Tex. Gov't Code Ann. § 81.014, does not waive the Bar's sovereign immunity. *See Delahoussaye v. City of New Iberia*, 937 F.2d 144, 148 n.6 (5th Cir. 1991) (state's grant of authority for entity to "sue and be sued in its own name" does "not amount to a waiver of Eleventh Amendment immunity"); *United Carolina Bank*, 665 F.2d at 559 (same); *see also Tooke v. City of Mexia*, 197 S.W.3d 325, 328-29, 342 (Tex. 2006) ("sue and be sued" provisions "do not, in and of themselves, waive" sovereign immunity under state law from suit in state court).

the State of Texas, and thus it is entitled to sovereign immunity and does not qualify as a "person" subject to suit under § 1983.

  That result is consistent with precedent from other circuits. Nearly every court of appeals decision to consider the question has held that mandatory bars are entitled to sovereign immunity. *See Nichols v. Ala. State Bar*, 815 F.3d 726, 732 (11th Cir. 2016) (per curiam) ("[T]he Alabama State Bar is an arm of the state of Alabama and thus enjoys Eleventh Amendment immunity . . . ."); *Dubuc v. Mich. Bd. of Law Examiners*, 342 F.3d 610, 615-16 (6th Cir. 2003) (holding that State Bar of Michigan was entitled to sovereign immunity); *Strojnik v. State Bar of Ariz.*, 829 F. App'x 776, 776 (9th Cir. 2020) (per curiam) (holding that claims against the State Bar of Arizona were "barred by the Eleventh Amendment"); *Thiel*, 94 F.3d at 405 (holding that Wisconsin State Bar "is immune from suit under the Eleventh Amendment"); *Hirsh v. Justice of Supreme Ct. of Cal.*, 67 F.3d 708, 715 (9th Cir. 1995) (per curiam) ("The Eleventh Amendment's grant of sovereign immunity bars monetary relief from state agencies such as California's Bar Association . . . ."); *Kaimowitz v. Fla. Bar*, 996 F.2d 1151, 1153, 1155 (11th Cir. 1993) (per curiam) (adopting district court's holding that the "Eleventh Amendment prohibits actions against" the Florida Bar); *Lupert v. Cal. State Bar*, 761 F.2d 1325, 1327 (9th Cir. 1985) (holding that "Eleventh Amendment bar[red]" suit against California State Bar Board of Governors); *O'Connor v. Nevada*, 686 F.2d 749, 750 (9th Cir. 1982) (per curiam) (holding that State Bar of Nevada "is immune from suit in federal court under the eleventh amendment"); *Ginter v. State Bar of Nev.*, 625 F.2d 829, 830 (9th Cir. 1980) (per curiam) (same as *O'Connor*); *see also Crosetto v. State Bar of Wis.*, 12 F.3d 1396, 1401 (7th Cir. 1993) (explaining that, at time of court's decision, "the lower federal courts that have addressed this issue unanimously have found particular state bars entitled to the sovereign immunity defense"); *cf. Clark v. Washington*, 366 F.2d 678, 681 (9th Cir. 1966) (holding that

16

Washington State Bar Association is not "a 'person' within the meaning" of § 1983 because it "is an agency of the state").

Although the Ninth Circuit recently rejected the Oregon State Bar's claim of sovereign immunity, *see Crowe v. Or. State Bar*, 989 F.3d 714, 730-33 (9th Cir.) (per curiam), *cert. denied*, 142 S. Ct. 79 (2021), that decision provides no basis for this Court to deviate from the controlling Fifth Circuit precedent holding that the Texas State Bar is an arm of the state. *See Campbell v. Sonat Offshore Drilling, Inc.*, 979 F.2d 1115, 1121 n.8 (5th Cir. 1992) (district courts must follow "legally indistinguishable" Fifth Circuit decisions). In any event, sovereign-immunity analysis requires "a careful examination of the particular entity at issue," and the Oregon State Bar appears to be distinguishable from the Texas State Bar. *McDonald v. Bd. of Miss. Levee Comm'rs*, 832 F.2d 901, 908 (5th Cir. 1987). The Texas State Bar's status as an arm of the state entitled to sovereign immunity is well established under Texas state law. *See supra* pp. 13-14. The same does not appear to be true of the Oregon State Bar. To the contrary, Or. Rev. Stat. § 9.010(4) provides that, subject to certain expressly delineated exceptions, the Oregon State Bar "is not subject to any statute applicable to a state agency, department, board or commission or public body." *Cf. Crowe*, 989 F.3d at 730 (noting that the Oregon Supreme Court has held that the Oregon State Bar "is a state agency," but only in the context of Oregon's "public records law"). *Crowe* provides no support for Plaintiffs' suit against the Texas State Bar.

## CONCLUSION

The Court should dismiss this action.

Dated: January 24, 2022

*Of Counsel:*
Thomas S. Leatherbury
State Bar No. 12095275
VINSON & ELKINS LLP
2001 Ross Avenue
Suite 3900
Dallas, TX 75201
Tel: (214) 220-7792
Fax: (214) 999-7792
tleatherbury@velaw.com

Joshua S. Johnson
State Bar No. 24070002
Morgan A. Kelley
State Bar No. 1617261
VINSON & ELKINS LLP
2200 Pennsylvania Avenue NW
Suite 500 West
Washington, DC 20037
Tel: (202) 639-6623
Fax: (202) 879-8934
joshjohnson@velaw.com
mkelley@velaw.com

Respectfully submitted,

*/s/ Patrick W. Mizell*
Patrick W. Mizell
Attorney-in-Charge
State Bar No. 14233980
S.D. Tex. Bar No. 36390
VINSON & ELKINS LLP
1001 Fannin Street
Suite 2500
Houston, TX 77002
Tel: (713) 758-2932
Fax: (713) 615-5912
pmizell@velaw.com

*Counsel for Defendant State Bar of Texas*

18

## CERTIFICATE OF SERVICE

I certify that on January 24, 2022, I electronically filed the foregoing motion and accompanying exhibits with the Clerk of the Court for the U.S. District Court for the Southern District of Texas by using the Court's CM/ECF system, which will send notification of such filing to the following:

Richard Robins
2450 Louisiana St. #400-155
Houston, TX 77006
(832) 350-1030
rich@TexasBarSunset.com

Dated: January 24, 2022                    */s/ Patrick W. Mizell*
                                           Patrick W. Mizell
                                           *Counsel for Defendant State Bar of Texas*